# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| WALGREEN CO., | ) | |
| | ) | |
|     Plaintiff/Counter-Defendant, | ) | |
| | ) | |
|     v. | ) | Case No. 12 C 1317 |
| | ) | |
| NETWORKS – USA V, INC., a Florida Corporation, NETWORKS – USA XVII, INC., a Florida Corporation, NETWORKS – XXIII, a Florida Corporation, and NETWORKS USA, INC., a Florida Corporation, | ) ) ) ) ) ) | |
| | ) | |
|     Defendants/Counter-Plaintiffs. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On May 11, 2012, Plaintiff Walgreen Co. ("Walgreens") brought the present First Amended Complaint against Defendants Networks – USA V, Inc. ("NUSA V"), Networks – USA XVII, Inc. ("NUSA XVII"), Networks – USA XXIII, Inc. ("NUSA XXIII"), and Networks USA, Inc. ("NUSA") alleging breach of contract and seeking a declaratory judgment regarding two commercial leases in Memphis, Tennessee and one commercial lease in St. Petersburg, Florida pursuant to the Court's diversity jurisdiction. *See* 28 U.S.C. § 1332. Before the Court is Defendant NUSA's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and Defendants NUSA XVII's and NUSA XXIII's motion for misjoinder pursuant to Rule 21. For the following reasons, the Court denies NUSA's motion to dismiss. Further, the Court, in its discretion, grants NUSA XVII's and NUSA XXIII's motion for misjoinder and severs these Defendants and the claims against them, namely, Counts III and IV, from this lawsuit. *See Lee v. Cook County, Ill.*, 635 F.3d 969, 971-72 (7th Cir. 2011) ("When a federal civil action is

severed, it is not dismissed. Instead, the clerk of court creates multiple docket numbers for the action already on file, and the severed claims proceed as if suits had been filed separately.").

## LEGAL STANDARDS

### I. Motion to Dismiss

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) (citation omitted). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570). "In evaluating the sufficiency of the complaint, [courts] view it in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *AnchorBank, FSB v. Hofer,* 649 F.3d 610, 614 (7th Cir. 2011).

### II. Motion to Sever/Misjoinder

Rule 20 governs the permissive joinder of parties and provides that multiple defendants may be joined in one action where: (1) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence,

2

or series of transactions or occurrences;" and (2) "any question of law or fact common to all defendants will arise in the action." Fed.R.Civ.P. 20(a)(2); *see also First Time Videos, LLC v. Does 1-500,* 276 F.R.D. 241, 251-52 (N.D. Ill. 2011). "Misjoinder occurs when the parties fail to satisfy either of the requirements for permissive joinder under Rule 20." *McDowell v. Morgan Stanley & Co., Inc.,* 645 F.Supp.2d 690, 694 (N.D. Ill. 2009). Rule 21 governs the misjoinder of parties and allows the Court to add or drop a party or sever any claim against a party. *See* Fed.R.Civ.P. 21. It is well-settled that a district court has broad discretion under Rule 21. *See Chavez v. Illinois State Police,* 251 F.3d 612, 632 (7th Cir. 2001) (appellate court "accord[s] wide discretion to a district court's decision concerning the joinder of parties"); *Otis Clapp & Son, Inc. v. Filmore Vitamin Co.,* 754 F.2d 738, 743 (7th Cir. 1985) ("Rule 21 gives the court discretion to sever any claim and proceed with it separately if doing so will increase judicial economy and avoid prejudice to the litigants.") (citation omitted).

## BACKGROUND

**I.    The Memphis Lease I**

In its First Amended Complaint, Walgreens alleges that on or about December 30, 1992, it entered into a lease ("Memphis Lease I") with third-party RFS, Inc. for the construction and lease of a building and premises located at 4183 Kirby, Memphis, Tennessee ("Walgreens #3086"). (R. 9, First. Am. Compl. ¶ 8.) Walgreens further alleges that in or around August 2004, RFS assigned The Memphis Lease I to Defendant NUSA V. (*Id.* ¶ 9.) Section 10(a) of the Memphis Lease I states in relevant part: "Landlord shall maintain and make all repairs to the exterior and structural portions of the Building, roof, pipes, ducts, wires and conduits leading to and from the Leased Premises or the Building." (*Id.* ¶ 10.) Section 17 of the Memphis Lease I

3

also states:

> If Landlord shall from time to time fail to perform any act or acts required of Landlord by this Lease and if such failure continues for thirty (30) days after receipt of notice from Tenant, Tenant shall then have the right, at Tenant's option, to perform such act or acts, in such manner as Tenant deems reasonably necessary, and the full amount of the cost and expense so incurred shall immediately be owing by Landlord to Tenant, and Tenant shall have the right and is hereby irrevocably authorized and directed to deduct such amount from fixed and percentage rent and other sums due Landlord, together with interest thereon at the so-called corporate base rate charged from time to time by The First National Bank of Chicago, plus two percent until fully reimbursed.

(*Id*. ¶ 11.) Moreover, Section 23 of the Memphis Lease I provides that the prevailing party is entitled to reasonable attorney's fees and costs incurred in any disputes between the Tenant and Landlord. (*Id*. ¶ 12.)

On or about December 8, 2010, Walgreens #3086 suffered a break-in whereby a large hole was cut into and through the roof directly over the Walgreens' pharmacy. (*Id*. ¶ 13.) Walgreens determined that the break-in was a casualty loss under the Memphis Lease I, repaired the hole at its own expense, and did not seek reimbursement for those costs. (*Id*.) Meanwhile, Walgreens' roof consultant, RRK Associates, Ltd. conducted an inspection of the roof of Walgreens #3086 and issued a report on or about June 15, 2011 stating that the roof is eighteen years old and has a useful life of fifteen to twenty years. (*Id*. ¶ 14.) The report further indicated that there are a number of serious flaws and structural problems present in the roof and that the roof should be replaced immediately. (*Id*.) More specifically, the report states that: (1) the two roof repairs to areas where holes were cut into the roofing have been permanently repaired; and (2) the cause of the roof leaks and general condition of the roof is not related to the two roof repairs conducted over the photo department and pharmacy. (*Id*. ¶ 15.) Walgreens further alleges that NUSA V and NUSA were made aware of this report by no later than September 21,

4

2011 via a Notice of Default.  (*Id.* ¶ 16.)  On August 31, 2011, NUSA V and NUSA sent Walgreens a Notice of Default claiming that Walgreens breached the Memphis Lease I by failing to pay for the repair of the entire roof of Walgreens #3086.  (*Id*. ¶ 19.)  NUSA V and NUSA further claimed that the maintenance of the roof is an event of casualty and subject to the self-insurance provision of the Memphis Lease I because the problems with the roof were a result of the December 2010 break-in.  (*Id*.)  Walgreens also asserts that it responded to NUSA V and NUSA denying that the replacement of the roof was an event of casualty and the responsibility of Walgreens and stated that the replacement of the roof was the obligation of NUSA V and NUSA under Section 10(a) of the Memphis Lease I.  (*Id*. ¶ 20.)  On October 3, 2011, NUSA V and NUSA reiterated their position, and thus Walgreens was forced to resort to the self-help provision of the Memphis Lease I to repair and replace the deteriorated roof on February 16, 2012.  (*Id*. ¶¶ 21, 22.)

Similarly, at least as early as August 18, 2010, Walgreens informed NUSA V and NUSA of clogged down spouts at Walgreens #3086.  (*Id*. ¶ 23.)  Walgreens alleges that the Memphis Lease I requires NUSA V and NUSA to maintain and make all repairs to the exterior and structural portions of Walgreens #3086 and to the pipes, ducts, and conduits leading to and from Walgreens #3086.  (*Id*. ¶ 24.)  Further, Walgreens contends that both parties' roofing consultants agreed that the roofing maintenance issues have impacted and at least partially caused the clogged down spouts.  (*Id*. ¶ 26.)  On September 9, 2010, NUSA V and NUSA responded to an August 18, 2010 Walgreens' letter asserting that the clogged down spouts are not an exterior maintenance matter.  (*Id*. ¶ 27.)  On or about September 21, 2011, Walgreens demanded that NUSA V and NUSA repair the clogged down spouts, yet NUSA V and NUSA failed to repair

5

the clogged down spouts within thirty days of Walgreens' demand. (*Id*. ¶¶ 28, 29.) As such, Walgreens alleges that it was forced to resort to the self-help provision of the Memphis Lease I to repair the clogged down spouts on February 16, 2012. (*Id*. ¶ 30.)

Likewise, on or near March 25, 2010, Walgreens informed NUSA V and NUSA of the need to paint the exterior of the Building because the Memphis Lease I requires NUSA V and NUSA to "maintain and make all repairs to the exterior and structural portions of the Building, roof, pipes, ducts, wires and conduits leading to and from the Leased Premises or the Building." (*Id*. ¶¶ 31, 32.) On April 28, 2010, NUSA V and NUSA responded to Walgreens' letter of March 25, 2010 asserting that painting is not an exterior maintenance matter, but only cosmetic. (*Id*. ¶ 34.) Furthermore, Walgreens alleges that on or about September 16, 2011, NUSA V and NUSA agreed to perform the necessary painting using "one of the colors we have in stock" without due regard to current color of the Building. (*Id.* ¶ 36.) In response, Walgreens demanded that NUSA V and NUSA paint the exterior of Walgreens #3086 consistent with its current color. (*Id.* ¶ 37.) Because NUSA V and NUSA failed to paint the exterior of Walgreens #3086 within thirty days of Walgreens' demand, Walgreens was forced to resort to the self-help provision of the Memphis Lease I and painted the exterior of Walgreens #3086 on February 16, 2012. (*Id.* ¶¶ 38, 39.)

## II.     The St. Petersburg Lease

On July 1, 1992, Walgreens entered into a lease ("St. Petersburg Lease") with third-party Central Plaza Central Ltd. for the construction and lease of a building and premises located at the Shopping Center at 34th Street and Central Avenue in St. Petersburg, Florida ("Walgreens #2665"). (*Id*. ¶ 40.) In or around July 2004, Central Plaza Central assigned the St. Petersburg

6

Lease to Defendant NUSA XVII. (*Id.* ¶ 41.) Section 11(a) of the St. Petersburg Lease states in relevant part: "Landlord shall maintain and make all repairs to the exterior and structural portions of the Building, roof, entranceways, to the Leased Premises." (*Id.* ¶ 42.) Section 19 of the St. Petersburg Lease also states:

> If Landlord shall from time to time fail to perform any act or acts required of Landlord by this Lease and if such failure continues for thirty days after receipt of notice from Tenant, Tenant shall then have the right, at Tenant's option, to perform such act or acts, in such manner as Tenant deems reasonably necessary, and the full amount of the cost and expense so incurred shall immediately be owing by Landlord to Tenant, and Tenant shall have the right and is hereby irrevocably authorized and directed to deduct such amount from fixed and percentage rent and other sums due Landlord.

(*Id.* ¶ 43.) Section 26 of the St. Petersburg Lease provides that the prevailing party is entitled to reasonable attorney's fees and costs incurred in any dispute between the Tenant and Landlord. (*Id.* ¶ 44.)

On December 14, 2007, March 28, 2008, April 10, 2008, Walgreens sent default notices to NUSA XVII and NUSA regarding the need to maintain and paint the exterior of Walgreens #2665. (*Id.* ¶ 45.) Walgreens further contends that under the St. Petersburg Lease it is the obligation of NUSA XVII and NUSA to maintain and make all repairs to the exterior and structural portions of Walgreens #2665 and that painting the exterior is maintenance of the exterior. (*Id.* ¶¶ 46, 47.) Walgreens asserts that NUSA XVII and NUSA failed to respond to any of Walgreens' letters or to paint the exterior of Walgreens #2665 within thirty days, and therefore, Walgreens was forced to resort to the self-help provision of the St. Petersburg Lease and painted the exterior of Walgreens #2665 on May 20, 2008. (*Id.* ¶¶ 48, 49.) In accordance with its rights under Section 19 of the St. Petersburg Lease, Walgreens deducted the cost of painting the exterior of Walgreens #2665 from the December 2009 rent payment pursuant to

Section 19 of the St. Petersburg Lease and, as a result, NUSA XVII and NUSA have threatened to sue Walgreens over its withholding the December 2009 rent.  (*Id*. ¶¶ 50, 51.)

On July 30, 2004, NUSA XVII entered into an agreement with third-party Jeffery Allen McHone, as Trustee or His Successor of the Jeffery Allen McHone Revocable Family Trust Dated December 14, 1993 ("JAM") entitled Declaration of Covenants, Conditions, Restrictions, and Easements ("CCRE").  (*Id*. ¶ 52.)  Walgreens #2665 is located on the land owned by NUSA XVII and covered by the CCRE.  (*Id.* ¶ 53.)  Walgreens further asserts that it is not a party to the CCRE and was not provided with notice of it prior to its execution, did not consent to it, and is not bound by it.  (*Id.* ¶ 53.)  Under the St. Petersburg Lease, Walgreens is only obligated to reimburse NUSA XVII for properly documented Common Area Maintenance ("CAM") payments related to Walgreens #2665 and nothing in the St. Petersburg Lease requires Walgreens to do or pay for work done on the JAM parcel.  (*Id*. ¶¶ 55, 56.)  Nonetheless, Walgreens alleges that NUSA XVII and NUSA have repeatedly threatened to sue Walgreens for an alleged failure to pay CAM payments on the JAM parcel.  (*Id*. ¶ 57.)

### III. The Memphis Lease II

On March 5, 1992, Walgreens entered into a lease ("Memphis Lease II") with third-party RFS-RAINES ROAD, L.P. for the construction and lease of a building and premises located at 4155 Hwy 61 South, Memphis, Tennessee ("Walgreens #2775").  (*Id.* ¶ 58.)  Thereafter, RFS-RAINES ROAD, L.P. assigned the Memphis Lease II to Defendant NUSA XXIII.  (*Id.* ¶ 59.)  Section 11(a) of the Memphis Lease II states in relevant part: "Landlord shall maintain and make all repairs to the exterior and structural portions of said Building including the roof and entranceways to said Building, but excluding doors, windows and plate glass."  (*Id.* ¶ 60.)

8

Section 19 of the Memphis Lease II also states:

> If Landlord shall from time to time fail to perform any act or acts required of Landlord by this Lease and if such failure continues for thirty (30) days after receipt of notice from Tenant, Tenant shall then have the right, at Tenant's option, to perform such act or acts, in such manner as Tenant deems reasonably necessary, and the full amount of the cost and expense so incurred shall immediately be owing by Landlord to Tenant, and Tenant shall have the right and is hereby irrevocably authorized and directed to deduct such amount from fixed and percentage rent and other sums due Landlord.

(*Id.* ¶ 61.) Also, Section 26 of the Memphis Lease II provides that the prevailing party is entitled to reasonable attorney's fees and costs incurred in a dispute between the Tenant and Landlord. (*Id.* ¶ 62.)

On or about March 9, 2012, April 13, 2012, and May 7, 2011, Walgreens sent default notices to NUSA XXIII and NUSA regarding the need to maintain and paint the exterior of Walgreens #2775. (*Id*. ¶ 63.) Further, Walgreens alleges that it is the obligation of NUSA XXIII and NUSA under the Memphis Lease II to maintain and make all repairs to the exterior and structural portions of Walgreens #2775 and that painting the exterior is maintenance of the exterior. (*Id*. ¶¶ 64, 65.) Walgreens also alleges that NUSA XXIII and NUSA have failed to respond to any of Walgreens' letters or to paint the exterior of Walgreens #2775. (*Id*. ¶ 66.)

## ANALYSIS

### I. Motion to Dismiss

Defendant NUSA filed an Answer to Walgreens' First Amended Complaint on July 29, 2012 and then filed its Rule 12(b)(6) motion to dismiss approximately two months later on September 24, 2012. Under these circumstances, NUSA's motion to dismiss is untimely. *See* Fed.R.Civ.P. 12(b)(b) ("A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed."). Courts review untimely motions to dismiss as motions for

9

judgment on the pleadings under Rule 12(c), which employs the same standard as Rule 12(b)(6). *See Hayes v. City of Chicago*, 670 F.3d 810, 813 (7th Cir. 2012); *Alioto v. Town of Lisbon,* 651 F.3d 715, 718 (7th Cir. 2011).

In its motion, NUSA argues that because it is not a party to any of the leases discussed above, the Court should dismiss it as a Defendant to this action. Walgreens, however, has alleged that NUSA is the alter ego, principal, or parent company of NUSA V, NUSA XVII, and NUSA XXIII (First Am. Compl. ¶¶ 2-5.) Walgreens further alleges that NUSA took action in concert with its alter egos, agents, or subsidiaries giving rise to the numerous breaches of the respective leases. (*Id*. ¶¶ 19, 21, 27, 34, 35, 51, 57.) In fact, in its Second Amended Answer, NUSA admits it is the principal of NUSA V and NUSA XVII, although it denies that NUSA XXIII is its alter ego, agent, or subsidiary. (R. 49, Sec. Am. Answer, ¶¶ 4, 5.)

Construing the well-pleaded facts and all reasonable inferences in Walgreens' favor, Walgreens' allegations sufficiently allege that NUSA was the alter ego, principal, or parent company of NUSA V, NUSA XVII, and NUSA XXIII and that NUSA acted in concert with the other Defendants in breaching the leases at issue in this lawsuit. NUSA's admission that it is the principal of NUSA V and NUSA XVII further underscores Walgreens' allegations. Meanwhile, it is hornbook law that a principal is liable for the acts of its agent if the agent has authority to bind the principal. *See Cambridge Credit Counseling Corp. v. 7100 Fairway, LLC,* 993 So.2d 86, 90-91 (Fla.App. 4th Dist. 2008) ("A principal may not accept the benefits of a transaction negotiated by the agent and disavow the obligations of that same transaction."); *Webber v. State Farm Mut. Auto. Ins. Co.,* 49 S.W.3d 265, 270, 274 (Tenn. 2001) (principal binds itself to contract of its agent through ratification); *see also Bank of Waukegan v. Epilepsy Found. of Am.,*

163 Ill.App.3d 901, 906, 114 Ill.Dec. 943, 516 N.E.2d 1337 (2d Dist. 1987) ("A principal is liable for those acts of its agent which the agent has actual or apparent authority to perform"). Accordingly, Walgreens' allegations state a claim to relief that is plausible on its face against Defendant NUSA. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678-79, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Therefore, the Court denies NUSA's motion to dismiss.

## II.     Motion to Sever/Misjoinder

In the present motion for misjoinder, the moving Defendants NUSA XVII and NUSA XXIII maintain that Walgreens' allegations concern three separate commercial lease agreements against three distinct Defendants. Specifically, Defendants maintain that the Memphis I Lease, the St. Petersburg Lease, and the Memphis II Lease involve different leases for different properties and that each Defendant, namely, NUSA V, NUSA XVII, and NUSA XXIII, is only a party to one specific commercial lease. Meanwhile, although NUSA, Inc. is a named Defendant, it is not a party to any of the leases at issue. Instead, as discussed above, Walgreens alleges that NUSA, Inc. is the principal or parent of Defendants NUSA V, NUSA XVII, and NUSA XXIII.

Indeed, the leases at issue involve three separate transactions of three separate properties that the parties entered into on different dates: (1) Walgreens #3086 at 4183 Kirby, Memphis, Tennessee; (2) Walgreens #2665 at 34th Street and Central Avenue in St. Petersburg, Florida; and (3) Walgreens #2775 at 4155 Hwy 61 South, in Memphis, Tennessee. Further, the parties who negotiated and entered into the leases with Walgreens eventually assigned their rights to Defendants NUSA V, NUSA XVII, and NUSA XXIII. Walgreens' grievances against Defendants NUSA V, NUSA XVII, and NUSA XXIII involve different issues with the separate properties, including a dispute about a December 2010 break-in at Walgreens #3086 in

Memphis, Tennessee. Other differences include that the St. Petersburg Lease dispute involves certain covenants, conditions, restrictions, and easements concerning land that NUSA XVII owns and the Memphis II Lease dispute involves the maintenance and painting of the exterior of Walgreens #2775. In sum, the transactions at issue are not the same nor do they arise out of the same transaction, occurrence, or series of transactions or occurrences. *See* Fed.R.Civ.P. 20(a)(2); *First Time Videos,* 276 F.R.D. at 251-52. The fact that Walgreens has alleged that NUSA is the principal or parent of NUSA V, NUSA XVII, and NUSA XXIII does not change this analysis – the leases themselves are separate, unrelated transactions and the disputes concerning the leases involve distinct events.

Nevertheless, Walgreens argues that because Defendants violated "the exact same terms" of the leases, permissible joinder is proper. Walgreens' argument that Defendants' conduct is similar does not necessarily suggest that their conduct is related justifies joining Defendants in a single action under Rule 20. *See McDowell v. Morgan Stanley & Co., Inc.,* 645 F.Supp.2d 690, 697 (N.D. Ill. 2009). If similar conduct fulfilled Rule 20's standard, Walgreens could join every lessor who ever allegedly failed to maintain leased property in one federal lawsuit.

On a final note, because Rule 21 unequivocally states that "the court may at any time, on just terms, add or drop a party," Walgreens' argument that Defendants waived their right to file a misjoinder motion is without merit. *See* Fed.R.Civ.P. 21.

## CONCLUSION

For these reasons, the Court denies NUSA's motion to dismiss. The Court, in its discretion, grants NUSA XVII's and NUSA XXIII's motion for misjoinder.

**Dated:** December 17, 2012

                                      **ENTERED**

                                      _____
                                      **AMY J. ST. EVE**
                                      **United States District Court Judge**