**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| WALGREEN CO., an Illinois Corporation, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | |
| v. | ) | Case No. 12 C 1317 |
| | ) | |
| NETWORKS — USA V, a Florida Corporation, NETWORKS USA, INC., a Florida corporation, | ) ) ) | |
| | ) | |
| Defendants/Counter-Plaintiffs. | ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

On May 11, 2012, Plaintiff Walgreen Co. ("Walgreens") brought a First Amended Complaint against Defendants Networks – USA V, Inc. ("NUSA V") and Networks USA ("Networks") alleging breach of contract and seeking declaratory judgment regarding a commercial lease at 4183 Kirby, Memphis, Tennessee ("Memphis Lease") based on the Court's diversity jurisdiction. *See* 28 U.S.C. § 1332. On September 24, 2012, NUSA V filed a Counterclaim against Walgreens alleging unlawful detainer and possession. Before the Court is NUSA V's motion for summary judgment as to its unlawful detainer counterclaim pursuant to Federal Rule of Civil Procedure 56(a). For the following reasons, the Court denies NUSA V's motion and also denies Walgreens' motion for sanctions brought pursuant to Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927 because NUSA's motion was not frivolous.[1]

---

[1] Walgreens further argues that Defendants have engaged in a pattern of bad faith during the present litigation. The Court recognizes that this litigation has been contentious. From this point forward, the Court expects the utmost in professional behavior from the parties and counsel in this matter.

# BACKGROUND

I.  **Northern District of Illinois Local Rule 56.1**

Local Rule 56.1 "is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson,* 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted). Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 632 (7th Cir. 2009). "The opposing party is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." *Id.* (citing N.D. Ill. R. 56.1(b)(3)(B)). Local Rule 56.1(b)(3)(C) requires the nonmoving party to present a separate statement of additional facts that requires the denial of summary judgment because the Court will not consider any additional facts proposed in the nonmoving party's Local Rule 56.1(b)(3)(B) Response. *See Ciomber v. Cooperative Plus, Inc.,* 527 F.3d 635, 643-44 (7th Cir. 2008); *Cichon v. Exelon Generation Co., L.L.C.,* 401 F.3d 803, 809 (7th Cir. 2005).

In general, the purpose of Local Rule 56.1 statements and responses is to identify the relevant admissible evidence supporting the material facts, not to make factual or legal arguments. *See Cady v. Sheahan,* 467 F.3d 1057, 1060 (7th Cir. 2006) ("statement of material facts did [] not comply with Rule 56.1 as it failed to adequately cite the record and was filled with irrelevant information, legal arguments, and conjecture"). "When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner

dictated by the rule, those facts are deemed admitted for purposes of the motion." *Cracco*, 559 F.3d at 632. Also, at summary judgment, the Court may only consider evidence that would be admissible at trial, although the evidence need not be admissible in form at this procedural posture. *See Harney v. City of Chicago,* 702 F.3d 916, 922 (7th Cir. 2012). In sum, "[f]or litigants appearing in the Northern District of Illinois, the Rule 56.1 statement is a critical, and required, component of a litigant's response to a motion for summary judgment. The purpose of the local rule is to make the summary judgment process less burdensome on district courts, by requiring the parties to nail down the relevant facts and the way they propose to support them." *Sojka v. Bovis Lend Lease, Inc.,* 686 F.3d 394, 398 (7th Cir. 2012).

## II.     Relevant Facts

NUSA V is a Florida corporation with its principal place of business located in Palm Beach Gardens, Florida. (R. 113, Counter-Pl.'s Rule 56.1 Stmt. Facts ¶ 1.) Walgreens is an Illinois corporation with its principal place of business in Deerfield, Illinois. (*Id*. ¶ 2.) On or about December 30, 1992, Walgreens entered into a lease (the "Lease") with third-party RFS, Inc. ("RFS") for the construction and lease of the building and premises located at 4183 Kirby, Memphis, Tennessee ("Store #3086"). (*Id*. ¶ 4.) Walgreens prepared and executed the Memphis Lease in Illinois. (*Id*. ¶ 5.) RFS, a Tennessee corporation, executed the Memphis Lease in Tennessee. (*Id*. ¶ 6.) Thereafter, RFS assigned the Memphis Lease to NUSA V. (*Id*. ¶ 7.)

Under the Memphis Lease, Walgreens owed its landlord fixed rent of $13,689.00 per month, payable on the first day of every month. (*Id*. ¶ 8.) Section 17 of the Memphis Lease provides in relevant part:

> If any rent is due and remains unpaid for ten (10) days after receipt of notice from Landlord, or if Tenant breaches any of the other covenants of this Lease and if

such other breach continues for thirty (30) days after receipt of notice from Landlord, Landlord shall then but not until then, have the right to sue for rent, or to terminate this Lease and re-enter the Leased Premises; but if Tenant shall pay said rent within said ten (10) days, or in good faith within thirty (30) days commence to correct such other breach, and diligently proceed therewith, then Tenant shall not be considered in default.

(*Id.* ¶ 9.) Section 17 also provides in part:

If Landlord shall from time to time fail to perform any act or acts required of Landlord by this Lease and if such failure continues for thirty (30) days after receipt of notice from Tenant, Tenant shall then have the right, at Tenant's option, to perform such act or acts, in such manner as Tenant deems reasonably necessary, and the full amount of the cost and expense so incurred shall immediately be owing by Landlord to Tenant, and Tenant shall have the right and is hereby irrevocably authorized and directed to deduct such amount from fixed and percentage rent and other sums due Landlord, together with interest thereon at the so-called corporate base rate charged from time to time by The First National Bank of Chicago, plus two per cent until fully reimbursed.

(*Id.* ¶ 10.)

On December 8, 2010, Store #3086 suffered a break-in at which time a large hole was cut through the roof of the pharmacy area. (R. 130, Pl.'s Rule 56.1 Stmt. Add'l Facts ¶ 27.) Upon discovering the break-in, Walgreens notified NUSA V and Networks by telephone. (*Id.* ¶ 28.) Walgreens repaired the damage to the roof that resulted from the break-in and paid for the repairs because it was self-insured. (*Id.* ¶¶ 29-30.) Walgreens did not seek reimbursement for the repairs of the roof necessitated by the break-in. (*Id.* ¶ 31.)

Thereafter, NUSA V sent Walgreens a roof inspection report that stated that the roof of Store #3086 needed to be completely replaced due to the damage from the break-in. (*Id.* ¶ 32.) Walgreens then hired a roofing consultant, RRK Associates, Ltd. ("RRK") to inspect the roof and on June 15, 2011, RRK prepared a report. (*Id.* ¶ 32.) In its report, RRK determined that the damages to the roof were not a result of the break-in, but of normal wear and tear. (*Id.* ¶ 33.) In

addition, RRK reported that the eighteen-year old roof had reached the end of its normal, useful life. (*Id*. ¶ 34.) Walgreens then informed NUSA V of the RRK report and demanded that NUSA V repair the roof, yet NUSA V refused to do so. (*Id*. ¶¶ 37, 38.)

In February 2012, Walgreens replaced the entire roof to Store #3086 at its own cost. (*Id*. ¶ 39; Def.'s Stmt. Facts ¶ 12.) Prior to replacing the roof, Walgreens informed Defendants of its intention to replace the roof. (Pl.'s Stmt. Facts ¶ 41.) After replacing the roof, Walgreens withheld rent for March and April 2012 based on its self-help rights under Section 17 of the Memphis Lease. (Def.'s Stmt. Facts ¶ 13.) On April 20, 2012, NUSA V sent Walgreens a notice of default for non-payment of rent. (*Id*. ¶ 14; Pl.'s Stmt. Facts ¶ 42.) Prior to receiving the April 2012 notice of default, Walgreens explained to Defendants why it withheld the March and April 2012 rent payments. (Pl.'s Stmt. Facts ¶ 42.) After receiving the April 20, 2012 notice of default, Walgreens continued to withhold rental payments from NUSA V. (Def.'s Stmt. Facts ¶ 16.) It withheld a total of $131,350.00, which was over nine months of payments. (*Id*.)

On November 23, 2012, Walgreens sent NUSA V a check for $30,211.32 to reimburse NUSA V for amounts mistakenly withheld in excess of the costs incurred in replacing the roof to Store #3086. (*Id*. ¶ 23.) On December 5, 2012, NUSA V returned the undeposited November 2012 check to Walgreens. (*Id*. ¶ 24.) Prior to this November check, the last rent payment Walgreens made to NUSA V was on February 3, 2012 for the amount of $13,689.00. (*Id*. ¶ 25.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P.

5

56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted). "A plaintiff must begin to meet this burden by submitting admissible, supporting evidence in response to a proper motion for summary judgment." *Harney v. City of Chicago,* 702 F.3d 916, 925 (7th Cir. 2012); *see also Fleishman v. Continental Cas. Co.,* 698 F.3d 598, 603 (7th Cir. 2012) ("To survive summary judgment, the nonmovant must produce sufficient admissible evidence, taken in the light most favorable to it, to return a jury verdict in its favor.").

## ANALYSIS

In Count I of its Counterclaim, NUSA V brings an unlawful detainer and possession claim based on Walgreens' alleged breach of the Memphis Lease for failing to pay rent after February 2012. (R. 49, Counterclaim, ¶ 46.) It is undisputed, however, that Walgreens stopped paying rent after February 2012 after invoking the self-help provision of the Memphis Lease because it replaced the roof on Store # 3086. Moreover, as NUSA V admits, the parties hotly dispute whether Walgreens properly invoked the self-help provision. NUSA V further asserts,

however, that the self-help issue is not relevant to the present summary judgment motion.

The parties do not dispute that Tennessee law governs their commercial lease dispute for purposes of this summary judgment motion. *See Auto–Owners Ins. Co. v. Webslov Computing, Inc.,* 580 F.3d 543, 547 (7th Cir. 2009) ("Courts do not worry about conflicts of laws unless the parties disagree on which state's law applies."). Under Tennessee law, the "cardinal rule of contractual interpretation is to ascertain and give effect to the intent of the parties." *Dick Broad. Co., Inc. of Tenn. v. Oak Ridge FM, Inc.,* 395 S.W.3d 653, 659 (Tenn. 2013) (citation omitted). Tennessee courts "initially determine the parties' intent by examining the plain and ordinary meaning of the written words" and the "literal meaning of the contract language controls if the language is clear and unambiguous." *Id.; see also BSG, LLC v. Check Velocity, Inc.,* 395 S.W.3d 90, 93 (Tenn. 2012). Terms are ambiguous if they are "susceptible to more than one reasonable interpretation." *Dick Broad. Co.,* 395 S.W.3d at 659 (citation omitted); *see also BSG, LLC*, 395 S.W.3d at 93 ("Contract language will be deemed ambiguous when it can 'be understood in more ways than one.'") (citation omitted). Tennessee courts do not "read provisions of a contract in isolation, *see BSG, LLC,* 395 S.W.3d at 93, but read contracts as a whole." *Perkins v. Metropolitan Gov't of Nashville,* 380 S.W.3d 73, 85 (Tenn. 2012). "The essential elements of any breach of contract claim include (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." *ARC Lifemed, Inc. v. AMC–Tennessee, Inc.,* 183 S.W.3d 1, 26 (Tenn.Ct.App. 2005).

Here, NUSA V argues that it is entitled to terminate the lease and retake possession of Store # 3086 because Walgreens breached the Memphis Lease when it "over-withheld" rent. As

7

discussed, Walgreens withheld rent as a self-help measure under Section 17 of the Memphis Lease due to NUSA V's failure to replace the roof at Store #3086.  In its motion, NUSA V argues Walgreens breached the Memphis Lease because it withheld more rent than the cost to replace the roof.  Walgreens does not dispute that it mistakenly withheld more money than the amount it cost to replace the roof.  In fact, in November 2012, Walgreens attempted to reimburse NUSA V for the over-withheld rent in the amount of $30,211.32, but NUSA V refused to accept this payment.

In any event, viewing the facts and all reasonable inferences in Walgreens' favor, as the Court is required to do at this procedure posture, there is a question of material fact whether NUSA V provided Walgreens with sufficient "notice of default" as required by Section 17 of the Memphis Lease, and thus NUSA V's summary judgment motion is unavailing.  In particular, it is undisputed that NUSA V sent a notice of default to Walgreens in April 2012 concerning Walgreens' failure to pay the March 2012 and April 2012 rent on the Memphis Lease.  Walgreens, however, argues that this notice of default concerns only the March 2012 and April 2012 rent payments and that any such notice is insufficient because it had invoked its self-help rights under the Memphis Lease.  Moreover, Walgreens contends that the April 2012 notice does not pertain to NUSA's present claim that Walgreens breached the lease sometime in October or November 2012 when it over-withheld rent.  Indeed, NUSA V admits in its opening memoranda that the "April default letter was limited to nonpayment of the March and April rent."  (R. 112, Open. Mem., at 10.)

As such, NUSA V implicitly agrees that the April 2012 notice of default is insufficient notice, but argues that the filing of its Counterclaim on September 24, 2012 and its first summary

8

judgment motion on October 24, 2012 — that it later withdrew — gave Walgreens sufficient notice that it was in default under the Memphis Lease. The Court thus turns to the language of the Memphis Lease to determine whether the filing of the Counterclaim and motion for summary judgment are sufficient notice. The first relevant part of the Memphis Lease, namely, Section 17 reads:

> If any rent is due and remains unpaid for ten (10) days after receipt of notice from Landlord, or if Tenant breaches any of the other covenants of this Lease and if such other breach continues for thirty (30) days after receipt of notice from Landlord, Landlord shall then but not until then, have the right to sue for rent, or to terminate this Lease and re-enter the Leased Premises ....

Section 17 does not define "notice," therefore, the Court, viewing the contract as a whole, turns to Section 24 of the Memphis Lease, entitled "Notices, which states:

> All notices hereunder shall be in writing and sent by United States certified or registered mail, postage prepaid, or by overnight delivery service providing proof of receipt, address if to Landlord, to the place where rent checks are to be mailed, and if to Tenant, to 200 Wilmot Road, Deerfield, Illinois 60015, Attention: Law Department, and a duplicate to the Leased Premises, provided that each party by like notice may designate any future or different addresses to which subsequent notices shall be sent. Notices shall be deemed given upon receipt or upon refusal to accept delivery.

(R. 71-2, Perlin Decl., Ex. 1, Memphis Lease, § 24.)

Under the plain and ordinary meaning of the Memphis Lease, the filing of the Counterclaim and motion for summary judgment are not sufficient notice because there is no evidence in the record that these filings were sent "by certified or registered mail, postage prepaid, or by overnight delivery service providing proof of receipt," nor is there evidence that NUSA V mailed these filings to Walgreens at 200 Wilmot Road, Deerfield, Illinois 60015. *See Dick Broad. Co.,* 395 S.W.3d at 659 ("literal meaning of the contract language controls if the language is clear and unambiguous.").

9

Indeed, NUSA V admits that these filings were not sent by certified mail. Instead, based on two Illinois Appellate Court cases, NUSA V argues that strict compliance with the notice provision of the Memphis Lease is not required. *See, e.g., Denis F. McKenna Co. v. Smith,* 302 Ill.App.3d 28, 33, 235 Ill.Dec. 253, 704 N.E.2d 826 (1st Dist. 1998); *Vole, Inc. v. Georgacopoulos,* 181 Ill.App.3d 1012, 1019, 131 Ill.Dec. 17, 538 N.E.2d 205 (2d Dist. 1989). NUSA V's argument is unavailing not only because Illinois case law is not controlling in this matter, but also because the Illinois cases are not persuasive. In *Vole*, for example, the defendant admitted to actual receipt of written notice of default, which is not the case here. *See id.*; *see also McKenna,* 392 Ill.App.3d at 33 (trial court found plaintiff had actual notice in real estate contract dispute). Further, the unpublished Tennessee Court of Appeals opinion that NUSA V cites for the first time in its reply brief is equally unavailing because the trial court found that the defendant waived strict adherence to the notice provisions in the trade contractor agreement that was in the context of a construction project for the City of Franklin, Tennessee. *See Lee Masonry, Inc. v. City of Franklin,* No. M2008-02844-COA-RS-CV, 2010 WL 1713137, at *9 (Tenn.Ct.App. Apr. 28, 2010).

Because there is a genuine dispute as to the material fact of whether NUSA V sufficiently provided Walgreens notice of its alleged default as required under the Memphis Lease, the Court denies NUSA's motion for summary judgment.[2]

---

[2] NUSA V also argues that Walgreens did not disclose the total costs of the roof replacement until November 2012, and thus it was impossible to send Walgreens a formal notice of default. NUSA V's argument is not supported by its Rule 56.1 Statement of Facts as it contends.

## CONCLUSION

For these reasons, the Court denies NUSA V's motion for summary judgment. The Court denies Walgreen's motion for sanctions brought pursuant to Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927 because NUSA V's motion for summary judgment was not frivolous under the circumstances.

**Dated:** August 2, 2013

**ENTERED**

_____
**AMY J. ST. EVE**
**United States District Court Judge**